# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| STEVEN REEVES TOWNSON and | ) | Case No. 12-03027-TOM-7 |
| DEBRA D. TOWNSON, | ) | |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION AND ORDER

This case came before the Court for hearing on January 9, 2013, on the Motion to Disqualify Professional filed by William G. Bond. Appearing before the Court were Thomas E. Reynolds, Chapter 7 Trustee; W. Lee Gresham, III and Chris Hood, counsel for the Trustee; William Dennis Schilling, counsel for William G. Bond; David B. Anderson and Holly Chestnut, counsel for Frontier Bank; and Harry I. Brown, Jr., witness for Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[2] This Court has considered the pleadings, arguments of counsel, the testimony of Brown, the exhibits, and the law, and finds and concludes

---

[1]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2]28 U.S.C. §157(b)(2)(A) and (G) provide as follows:

> (b)(2)Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate[.]

as follows:[3]

## FINDINGS OF FACT[4]

William G. Bond ("Bond"), a defendant in adversary proceeding 12-00160 ("AP") filed by the chapter 7 trustee ("Trustee") on October 29, 2012, filed the Motion to Disqualify that is now before the Court. Bond seeks to remove the firm of Heninger Garrison Davis, LLC ("HGD") from representing the Trustee in the AP, alleging that the firm is disqualified due to its representation of another client. The Trustee filed the AP against Frontier National Corporation, Frontier Bank, and several directors and/or officers of one or both of those institutions.[5] Basically, the complaint alleges Frontier has not complied with its obligation as to debtor Steven Reeves Townson ("Townson"), a former officer and director of Frontier. According to the complaint Townson, in an effort to boost Frontier's financial position, agreed to reduce a monetary benefit he was otherwise entitled to each year. It is alleged that Frontier agreed in May 2010 to sell 15 shares of preferred stock, with a redemption value of $175,000.00 per share, to Townson for $1.00 per share in recognition of Townson's sacrifice, and that once Townson reached the age of 55 he would be able to redeem one share per year for 15 years at the agreed-upon redemption value. The complaint further alleges that

---

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] According to the complaint filed by the Trustee, Frontier National Corporation and Frontier Bank are separate entities. The relationship of each of these entities to the other is unclear, but it is apparent from testimony and pleadings that both are allegedly involved in the events that gave rise to the Trustee's adversary proceeding and to the state court action filed by Harry I. Brown, Jr., that will be discussed herein. As to the issues currently before this Court the distinction between the two entities is not important. For the sake of convenience the entities will be collectively referred to as "Frontier."

the Board of Directors of Frontier ("Board") adopted on August 19, 2010, a Resolution approving the offer and issuance of the shares; however, the shares were never issued despite a verbal demand made by Townson's wife in December 2011. Shortly thereafter, Townson's employment with Frontier was terminated in January 2012. The Trustee seeks to have Frontier issue and redeem the shares in question, and to have a judgment entered in his favor for the value of the shares plus interest, fees, costs, and damages. An Application to Employ HGD[6] was filed August 20, 2012, and following a hearing on September 10, 2012, an Order was entered approving its employment.

The Trustee is not the only client of HGD currently involved in an action against Frontier. According to the Motion to Disqualify, Harry I. Brown, Jr. ("Brown"), who served with Townson on the Board, is represented by HGD in state court litigation filed by Frontier in the Circuit Court of Coosa County, Alabama.[7] Attached to the Motion to Disqualify is the answer and counterclaim filed by HGD for Brown against Frontier and others who were directors of Frontier at the time of the events described in the counterclaim. *See* First Amended Answer and Counter Claims, Exhibit B to the Motion to Disqualify, Doc. No. 79. One of the allegations in Brown's counterclaim is that he gave up certain monetary benefits to improve Frontier's capital situation, and that in recognition of Brown's action, Frontier agreed to offer to Brown 15 shares of preferred stock in Frontier at $1.00 per share. The counterclaim asserts that this agreement was memorialized in a Resolution passed by the Board at a special meeting on December 8, 2011. According to the answer and counterclaim, those shares were never issued to Brown.

---

[6] Prior to filing his bankruptcy petition Townson had hired HGD to represent him in pursuing his alleged claims against Frontier.

[7] HGD represents Brown as well as two companies (of which Brown is the only member) as defendants/counterclaimants in the state court action.

3

Brown testified at the hearing on the Motion to Disqualify that he was represented by HGD in the Coosa County litigaton and that he was considering hiring HGD to also represent him as personal representative of his late father's probate estate. According to Brown's testimony, his father had also been on the Board, and Frontier has filed a claim in the estate relating to a guaranty signed by his father. Brown further claimed that the guaranty had been previously released by Townson on behalf of Frontier. Brown admitted that any or all of the directors on the Board, including Townson, are potential witnesses in the probate estate.

Brown's testimony also reflects that he was on the Board at the time the Resolution regarding the offer of shares to Townson was passed, but that he was not on the Compensation Committee and was not involved in the negotiations regarding the offer. He does not know why he was not included as a defendant in the Trustee's AP.[8] Brown also acknowledged that Townson was on the Board when the Resolution regarding the offer to Brown of 15 shares of stock was passed, and that Townson is not a defendant in the Coosa County litigation.

It was Brown's testimony that he and Townson are not friends and have not discussed the issues relating to the Trustee's AP. Brown acknowledged he recently contacted Townson, but not any of the other directors, to inform him of the probate issue. Furthermore, Brown testified that he and Townson had at least one meeting at the offices of HGD because Townson had information "important" to Brown's case.

At the hearing on the Motion to Disqualify, attorney W. Lee Gresham, III of HGD addressed the Court's questions as to how, if HGD continued to represent both the Trustee and Brown,

---

[8] In the Coosa County litigation and in the Trustee's AP, some, but not all, of the Board members of Frontier are named as defendants.

4

expenses would be allocated between the two cases. Gresham stated that the expenses would not be split, but later acknowledged that the expense of a deposition helpful in both cases would be shared.[9]

Although HGD has argued that it did not and does not have a conflict, in its Amended Application to Employ it made the following disclosure:

> Said attorneys were employed by the Debtor prior to the filing of the Debtor's bankruptcy case.
> In addition, said attorneys currently represent Harry I. Brown, Jr., in an action pending in the Circuit Court of Coosa County, Alabama brought by Frontier Bank against Brown (the "Coosa County Litigation"). In connection with their defense of Brown in the Coosa County Litigation, said attorneys are also prosecuting a counterclaim on behalf of Brown against Frontier Bank and some of the Directors of Frontier Bank..
> Harry I. Brown, Jr., was a member of the Board of Directors of Frontier National Corporation at the time the compensation agreement was reached with the Debtor. However, Harry I. Brown, Jr., ceased to serve as a member of said board at the time the Debtor's employment was terminated, and also was not serving as a member of the board of directors at the time the Debtor became aware Frontier National Corporation and Frontier Bank did not intend to honor their agreement with the Debtor with respect to the issuance and ultimate redemption of the Preferred Stock. Said attorneys have been approached by Harry I. Brown, Jr., to represent his father's Probate Estate in connection with a matter related to the Coosa County litigation. As of the date of this amended application, the attorneys have not been retained to represent the Probate Estate.
> Furthermore, said attorneys recently have been notified that an insurer for Frontier Bank (Travelers) is investigating a claim of loss by the insured in connection with alleged dishonesty or theft by Steven Townson, Debtor. Said attorneys received notice of this investigation and claim on January 18, 2013. The notice was accompanied by a proof of loss submitted to the insurer by Frontier Bank. Said attorneys do not represent the Debtor in this matter.

These disclosures were not mentioned or referenced in the original Application to Employ and apparently might have gone undisclosed or with no notice having been given had the Motion to

---

[9] No clear explanation was provided as to how expenses could be or would be shared between the two HGD clients (Brown and the Trustee). Further, the Amended Application provides no additional information as to how this might occur.

5

Disqualify not been filed by Bond.

## CONCLUSIONS OF LAW

A trustee may employ professionals pursuant to Bankruptcy Code section 327. There are different requirements for professionals employed pursuant to § 327(a), which concerns hiring professionals to assist the trustee in carrying out his duties, and professionals employed pursuant to § 327(e) concerning the employment of special counsel with regard to a particular matter. However, both of these sections require that the attorney to be employed not hold or represent an interest adverse to the estate.[10] This issue is of particular concern in this case.

HGD represents the Trustee in his action against Frontier and certain directors. HGD also represents Brown in the state court action filed by Frontier and has filed counterclaims against Frontier and many of the same directors.[11] In his Addendum to the Motion to Disqualify Bond raises the issue that one or more of these defendants may not have sufficient assets to pay both judgments if the plaintiffs were successful in each of the these actions.

In *M & M Marketing, LLC*, 426 B.R. 796 (8th Cir. B.A.P. 2010), an involuntary chapter 7 petition was filed against the debtor. After the order for relief was entered the chapter 7 trustee identified a potentially avoidable transfer and hired counsel to pursue a particular creditor. The counsel chosen by the trustee already represented the petitioning creditors. The particular creditor who was the target of the avoidance action sought to have counsel removed from representing the

---

[10] There has been some question as to whether HGD's employment is pursuant to § 327(a) or § 327(e); however, on January 22, 2013, after the hearing on the Motion to Disqualify, an Amended Application to Employ was filed that indicated HGD is to be employed pursuant to 11 U.S.C. § 327(e).

[11] HGD may also represent Brown as personal representative of his father's probate estate.

6

trustee, claiming in part that the petitioning creditors held an interest adverse to the estate because they too had received potentially avoidable transfers prior to the bankruptcy filing and that he potentially held state law claims against the petitioning creditors as well. The court set out the definition of an "interest adverse" to the estate:

> To "hold an interest adverse to the estate" means: "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." To "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest.

*Id*. at 802 - 03 (citations omitted). The court agreed with the defendant-creditor that the petitioning creditors did hold an interest adverse to the estate, and furthermore, determined that an actual conflict existed:

> The final reason that [counsel] cannot be employed under § 327(e)—or § 327(a)—is that [counsel's] representation of the Trustee poses an actual conflict regardless of whether the scope of [counsel's] employment is limited to pursuing [the defendant-creditor]. As noted above, an individual's interest is considered adverse to an estate if that interest would tend to lessen the value of a bankruptcy estate or foster a predisposition against the estate. In this case, the interests of the Petitioning Creditors have the potential of doing both. The record (albeit sparse) suggests that [the defendant-creditor] might possess state-law claims against three of the Petitioning Creditors for the recovery of potentially fraudulent transfers. If [the defendant-creditor] pursues those claims, and the Trustee pursues the Petitioning Creditors for recovery of the same transfers, it is not difficult to conceive of several situations in which [counsel's] loyalties might be divided. If [the defendant-creditor] and the Petitioning Creditors seek to settle their dispute in a way that reduces the pool of assets available to the estate, then [counsel's] interests would be adverse to the estate. The zeal with which [counsel] pursues [the defendant-creditor] on behalf of the estate could be affected (negatively or positively) by litigation that might ensue between [the defendant-creditor] and the Petitioning Creditors. Or [counsel] might unearth incriminating information in his defense of the Petitioning Creditors which would interfere with his unbiased representation of the estate. Ultimately, it is unnecessary to fathom every possible conflict that might arise from [counsel's] concurrent representation of the Petitioning Creditors and the estate. **It is sufficient to preclude**

7

> **[counsel's] employment by the estate under § 327(a) or (e) if the record supports the existence of a single potential conflict. And here it does.**

*Id*. at 804 (emphasis added).

While the facts of *M & M Marketing* may not be exactly on point with the issues here, that court's analysis squarely addresses many of this Court's concerns regarding the employment of HGD. The Trustee's AP and Brown's state court action admittedly share some overlapping issues. Both Townson and Brown were on the Board at the time the relevant events in each action took place. For the most part the same people were involved in those events. It is conceivable that during the course of investigating the claims in each of these actions HGD could discover information that could help one client while harming the other. Furthermore, it is conceivable that a win for both clients could mean there are not enough assets to go around. Counsel for the Trustee will be obliged to get the maximum recovery available for the estate but it will be impossible to do so if counsel has the same obligation to another client and the common defendants cannot completely satisfy both awards. Further, as noted at the hearing on the Motion to Disqualify, if all parties to the AP and the Coosa County litigation were ordered to participate in "global mediation," and if there were limited funds available, how would HGD get the maximum for two clients competing for money from the same "pot?" Although this is not certain to happen, the record supports the existence of more than one potential conflict which is enough to prevent HGD from representing the Trustee in the AP.

For whatever reasons, Brown is not a defendant in the Trustee's AP, and Townson is not a defendant in Brown's state court counterclaim. If either was a defendant in the other action there would be an actual conflict that would keep HGD from representing the estate. However, whether or not an actual conflict exists, the appearance that HGD represents an interest possibly adverse to

8

Case 12-03027-DSC7    Doc 97    Filed 03/07/13    Entered 03/07/13 14:09:15    Desc Main
Document      Page 8 of 12

the estate, and thus has a potential conflict, is a problem. In *Buckley v. Transamerica Investment Corp. (In re Southern Kitchens, Inc.)*, the court opined:

> In the process of identification, however, potential conflicts on the subject dispute are just as disqualifying as actual, current ones. . . . Regardless of whom a trustee has identified as an opponent, if a past or present client of proposed counsel was involved in any way with the events that gave rise to the dispute, or could otherwise be the subject of a claim based on those events, the client has an interest adverse to the estate and disqualification results.

*Buckley v. Transamerica Investment Corp. (In re Southern Kitchens, Inc.)*, 216 B.R. 819, 827 (Bankr. D. Minn. 1998).

Here, Townson and Brown were unquestionably involved in the events giving rise to each action. Brown served on the Board at the time it passed the Resolution to offer Townson 15 shares of stock. Likewise, Townson was on the Board when a similar Resolution was passed with regard to Brown. Brown in fact testified that he and Townson attended a meeting at HGD's offices because Townson had "important" information regarding Brown's case. Thus, Townson and Brown are each potential witnesses in the other's action and HGD could be in a position of examining its own client as a witness, whether it be on direct examination or as an adverse witness called by the defense. Furthermore, Brown testified that any of the directors on the Board, including Townson, could be a witness with regard to the claim filed by Frontier in Brown's father's probate estate. At the very least these connections create an appearance that HGD represents an interest adverse to the estate.

Another area of concern involves common expenses, such as the cost of discovery, between HGD's two clients. There are two choices - either the clients will "share" the expenses or HGD will keep the expenses separate. Either way is problematic. Sharing the cost of a deposition, for example, will in effect result in the estate (and the unsecured creditors) shouldering an expense that

9

is not entirely beneficial to the estate. Brown's state court action against Frontier and the directors includes claims that are irrelevant to the Trustee's adversary proceeding. While some of the testimony elicited in the deposition could be important to the estate, there will be time spent questioning the deponent about the issues not relevant to the Trustee's AP. If the cost of the deposition is split down the middle the estate will in effect pay for discovery that only benefits Brown. The only way to get around this problem is for HGD to depose the same person twice, asking only the questions relevant to the client paying for the particular deposition. Obviously this would be impractical and a waste of resources. If separate attorneys represented Brown and the Trustee the problem would be avoided altogether.

Even if HGD continued to represent the estate this will not necessarily be the end of the subject. If new or additional information surfaces regarding an actual or a potential conflict, HGD could still be removed from representing the Trustee. It would not matter if HGD were in the middle or at the end of its representation. Depending on the facts it is possible HGD's fees could be reduced or denied altogether regardless of how much time it had invested in the case. The adversary proceeding is right now in the beginning stages. The complaint has only recently been filed and a motion to dismiss is still pending. No significant harm will have been done by ending HGD's representation now. The Court recognizes that HGD is already familiar with the facts and circumstances that gave rise to the adversary proceeding but that familiarity may be as much of a disadvantage as an advantage. Birmingham is a very large legal community and there are other well-qualified attorneys who could represent the Trustee, have no ties or connections to any parties or witnesses, and could quickly "get up to speed" in the AP. The benefits of retaining HGD as counsel are outweighed by the possible fight over a limited pot, the appearance of conflicts, the expense-

splitting dilemma, and the potential for an actual conflict.

HGD claims it did not disclose that it represented Brown because it did not see a need to do so. This assertion in and of itself is troubling. As one court has said:

> All facts that may be relevant to a determination of whether an attorney is disinterested or holds or represents an interest adverse to the debtor's estate must be disclosed. See, e.g., *Diamond Lumber v. Unsecured Creditors' Committee*, 88 B.R. 773, 777 (N.D. Tex. 1988); *In re Roberts*, 75 B.R. 402, 411 (D. Utah 1987). The purpose of such disclosure is to permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment. **This decision should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment.**

*In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988) (emphasis added); *see also In re Biddle*, No. 12-05171, 2012 WL 6093926, at *4 (Bankr. D.S.C. Dec. 6, 2012) (disclosure is required "to ensure undivided loyalty and untainted advice from professionals") (citation omitted). HGD should not have unilaterally made the decision that its representation of Brown has no bearing on its representation of the Trustee. There is no question that Brown and Townson have connections. If HGD believed it would have no conflicts representing both clients, it is difficult to see how HGD would not disclose these connections so that the Court and other interested parties could examine the relationships and conclude for themselves that the representation of both is no cause for concern. HGD has now amended its Application for Employment to disclose its representation of Brown but it did not do so until Bond brought the issue to the Court's attention and the Court indicated at the hearing its view that the information should have been disclosed.

## **CONCLUSION**

Heninger Garrison Davis LLC maintains a good reputation in the Birmingham community and this Court does not conclude that it acted with the intent to deceive or intent to use its

11

representation of both the Trustee and Brown to an impermissible advantage.  Nonetheless, it is possible that the dual representation could ultimately lead to HGD acting in favor of one client to the detriment of the other.  Even if somehow HGD could avoid doing so, there is still an appearance that the connections between Townson and Brown create a conflict or could later give rise to a conflict.  Removing HGD as counsel for the Trustee at this early stage in the adversary proceeding will prevent future problems and the possibility that HGD could ultimately be denied fees.  Therefore, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the Motion to Disqualify Counsel for the Trustee is **GRANTED**.

It is further **ORDERED, ADJUDGED,** and **DECREED** that the Order approving the Application to Employ HGD is set aside.

Dated: March 7, 2013

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

xc: Thomas E. Reynolds
W. Lee Gresham, III
Chris Hood
William Dennis Schilling
David B. Anderson
Holly Chestnut

12